UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE BECK,

                              Plaintiff,      **No. 6:12-CV-06495(MAT)**
                                              **DECISION AND ORDER**

                 -vs-

CAROLYN W. COLVIN, Commissioner of
Social Security,
                              Defendant.
_____


### INTRODUCTION

      Represented by counsel, Stephanie Beck ("Plaintiff") brought
this action pursuant to Title II of the Social Security Act ("the
Act"), seeking review of the final decision of the Commissioner of
Social Security ("the Commissioner") denying her application for
Disability Insurance Benefits ("DIB"). The Court has jurisdiction
over this matter pursuant to 42 U.S.C. § 405(g).

### PROCEDURAL HISTORY

      On October 6, 2009, Plaintiff filed an application for
disability insurance benefits alleging disability with an onset
date of December 12, 2008, due to multiple sclerosis ("MS"),
fibromyalgia, psoriasis, obesity, depression, pain, and side-
effects caused by her various medications. T.74, 76.[1] After the
claim was denied initially and upon reconsideration, Plaintiff
requested a hearing before an administrative law judge ("ALJ").

_____

[1]
      Citations to "T.__" refer to pages from the administrative transcript
submitted by the Commissioner in connection with her answer to the complaint.

The hearing was conducted via videoconference on November 19, 2010, by ALJ Jennifer Whang. Plaintiff was assisted by a non-attorney representative at the hearing.

In a decision dated January 10, 2011, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Specifically, the ALJ found that Plaintiff (1) met the insured status requirement through December 31, 2013; (2) had not engaged in substantial gainful activity since December 12, 2008; (3) suffers from the following severe ailments: MS, fibromyalgia, psoriasis, asthma, and obesity; (4) does not have an impairment or combination of impairments that meets or medically equals a listed impairment; (5) has the residual functional capacity ("RFC") to perform sedentary work with various environmental limitations, as well as a sit/stand option and the ability to alternate between sitting and standing every thirty minutes; (6) is capable of her performing past relevant work as a claims examiner and clinical therapist as well as other jobs that exist in significant numbers in the national economy; and (7) therefore does not meet the Act's definition of disabled.

In April 2012, Plaintiff retained an attorney, who obtained updated treating source questionnaires from three of Plaintiff's treating physicians, see T. 490, 494, 487, which were submitted as additional evidence to the Appeals Council. T.5.  On August 24, 2012, the Appeals Council accepted this additional evidence into

the record, but denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  T.1-5.

Plaintiff instituted this action on December 4, 2012, arguing that the ALJ's decision was not supported by substantial evidence in the record and was based on erroneous legal standards.

Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure seeking to reverse the judgement of the Commissioner and remand for calculation of benefits, or alternatively, for further administrative proceedings.  The Commissioner has opposed the motion and has cross-moved for judgment on the pleadings.  For the reasons set forth below, this Court finds that the Appeals Council erred in denying review of the ALJ's determination without explaining why additional evidence submitted by Plaintiff to the Appeals Council was rejected.  Further, after considering the whole record including the additional evidence, this Court finds that the record overwhelmingly supports a finding of disability.  Therefore, this matter is remanded to the Commissioner for calculation and payment of benefits.

## **FACTUAL BACKGROUND**

Plaintiff was born on August 1, 1970, and was forty years-old as of the date of the administrative hearing.  From February 2008, through September 2010, while living in North Carolina, she was under the care of Dr. Elliott L. Semble who diagnosed her with

fibromyalgia, MS, and psoriasis. T.323.  Plaintiff was also treated for psoriasis by dermatologist Dr. Dori Hunt in North Carolina. T.392, 385.

On December 12, 2008, Plaintiff left her position as a mobile crisis counselor for the Easter Seals due to her health issues. T.34.  Prior to leaving the position, Plaintiff had missed three months of work in 2008 and two months in 2007 due to MS flare-ups. Plaintiff has not been employed since December 2008. Plaintiff moved to New York in the autumn of 2010.

Plaintiff's MS is "longstanding" and she experiences "recurrent flares" every three to four months which cause weakness in her arms and legs, muscle spasms, fatigue, and pain.  T.252, 311, 323. Laboratory tests show that her inflammatory markers are "thru [sic] the roof." T.357. Her MS causes fatigue, interferes with her ability to sleep, and causes pain.

Plaintiff's psoriasis has been described by her physicians as "severe." T.385, 392.  Approximately five times per year, she experiences flares so severe that she is unable to wear clothing because fabric irritates her skin.  T.29.  Despite many attempted treatments, there has been no long-term remission of the psoriasis which has affected Plaintiff's toenails so badly that she has required surgery and is limited to wearing certain types of shoes. Sometimes, she is unable to wear shoes at all. T.30, 450. Plaintiff

-4-

also suffers from psoriatic arthritis in her toes and other joints. T.301.

Plaintiff also has been diagnosed with fibromyalgia, and experiences "[t]ender points noted in a typical fibromyalgia distribution." T.304. The fibromyalgia causes severe pain. T.297, 299, 301, 304, 305, 306, 309, 310, 320, 322. Related problems are weak joint ligaments in her feet and joint stiffness. The consultative physician concluded that Plaintiff "has episodes of significant symptoms" related to her MS and probably to her fibromyalgia. T.253.

The MS, fibromyalgia, and psoriasis all cause Plaintiff to experience severe pain on a routine basis. Plaintiff has consistently reported intractable pain to her treating physician levels, including pain levels as high as 10 out of 10. T.297, 299, 301, 303, 304, 305, 306, 309, 310, 320, 322.

Plaintiff takes many medications, including Zanaflex, Vicodin, Methotrexate, Cymbalta, Ambien, Neurontin, and Provigil. T.27, 28, 32. These cause numerous side-effects, including fatigue and flu-like symptoms. Some of the medications used to treat her psoriasis can cause MS flare-ups and some of the MS medications can cause psoriasis flare-ups. T.308, 310.

**DISCUSSION**

## I. Standard of Review

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); see also, e.g., Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

The district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). This Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The Commissioner's determination will not be upheld if it is based on an erroneous view of the law that fails to consider highly probative evidence. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). In such cases, the reviewing court has the authority to reverse with or without remand. See 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Plaintiff's Arguments

### A.   Failure of the Appeals Council to Consider Properly Submitted Additional Evidence

Plaintiff asserts that the Appeals Council failed to properly consider statements from three treating physicians submitted as supplemental evidence.

Social Security regulations allow a claimant to submit additional evidence to the Appeals Council in support of the Request for Review.  See 20 C.F.R. § 404.970(b).  The Appeals Council must accept the evidence so long as it is new, material, and relates to the period on or before the date of the ALJ's decision.  See id.  Additional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, so long as the evidence pertains to the same condition previously complained of.  Cf. Brown v. Apfel, 174 F.3d 59, 64-65 (2d Cir. 1999) (considering evidence of symptoms that occurred six months after the ALJ's decision).

Three new items were accepted by the Appeals Council.  The first item was a Medical Source Statement by Thomas Mitchell, M.D., dated May 4, 2012, opining that Plaintiff would need one ten-minute rest period per hour or less at any job she retained.  T.487. Additionally, Dr. Mitchell indicated that Plaintiff's medical condition would mildly effect her ability to concentrate, moderately effect her ability to sustain work pace, and that five of her medications cause fatigue.  T.487-88.  Dr. Mitchell

-7-

determined that if Plaintiff were to work five days per week for a total of forty hours, she would be expected to have substantial absences (defined as four or more per month).  T.487.

The second item of additional evidence was a Medical Source Statement by James Freeman, M.D., dated May 15, 2012, stating that Plaintiff's medical limitations had been present since at least October 2010, when he began treating her.  T.495.  Dr. Freeman reported that Plaintiff would need complete freedom to rest frequently, without restriction, at any job she obtained.  T.494. Additionally, Dr. Freeman indicated that Plaintiff's medical condition would severely affect her abilities to concentrate and to sustain work pace. He noted that two of her medications cause drowsiness and disturb concentration.  T.494-95.  Lastly, Dr. Freeman determined that if Plaintiff were to work five days per week equaling forty hours, she would be expected to have substantial absences (defined as four or more per month).  T.494.

The third item of additional evidence was a Medical Source Statement by David Halpert, M.D. and Physician's Assistant ("P.A.") Erica Mendelson dated April 27, 2012. Dr. Halpert opined that Plaintiff's current medical limitations existed before December 2008.  T.491.  He also stated that Plaintiff would need complete freedom to rest frequently without restriction at any job she retained. T.490.  Dr. Halpert indicated that Plaintiff's medical condition would severely affect her ability to concentrate and

severely affect her ability to sustain work pace, and also that several of her medications cause fatigue.   T.490-91.   Finally, Dr. Halpert opined that if Plaintiff were to work five days per week equaling forty hours, she would be expected to have substantial absences (defined as four or more per month).   T.490.

Since the doctors' statements indicate they began treating Plaintiff after the ALJ's decision, the Appeals Council had discretion to exclude the evidence as outside the relevant time period. See 20 C.F.R. § 404.970(b). However, the Notice of Appeals Council Action states that "we considered . . . the additional evidence and found that this information does not provide a basis for changing the [ALJ's] decision."   T.1-2. As discussed further below, the Appeals Council committed legal error when it considered the supplemental evidence and rejected it without setting forth its reasons for doing so.

**B.   Failure To Properly Assess Plaintiff's RFC.**

The ALJ concluded that Plaintiff has the RFC to perform sedentary work, subject to certain postural and environmental limitations, and that she can perform her past relevant work or other jobs available in the national economy. T.78. The Court agrees with Plaintiff that these conclusions are legally and factually erroneous.

### 1.   Failure to Consider Absenteeism and Inability to Work on a Regular and Consistent Basis

As the ALJ found, Plaintiff suffers from impairments and related symptoms (both from her impairments and the medications she takes to treat those conditions) that cause physical and mental limitations, which in turn limit her ability to perform in a work setting. See 29 C.F.R. § 414.1545(a)(1). In assessing a claimant's physical and  mental limitations, the ALJ must take into account the claimant's ability to engage in "work activity on a regular and continuing basis." 29 C.F.R. § 404.1545(b); § 404.1545(c). The ALJ, however, erroneously failed to consider Plaintiff's actual or likely absenteeism due to her various ailments. See, e.g., McArthur v. Commissioner of Social Sec., No. 3:06-CV-860(LEK/DRH), 2008 WL 4866049, at *16 (N.D.N.Y. Nov. 7, 2008).

To be disabled within the meaning of the Act, a claimant must be unable to engage in substantial gainful activity, which means "the performance of substantial services with reasonable regularity . . . ." DiRienzis v. Heckler, 748 F.2d 352, 353 (2d Cir. 1984); see also Moore v. Secretary of Dept. of Health and Human Servs., 778 F.2d 127, 132 (2d Cir. 1985).  "[A]n ability to work 'only on an intermittent basis is not the ability to engage in substantial gainful activity.'" (quoting Koseck v. Secretary of Health and Human Servs., 865 F. Supp. 1000, 1014 (W.D.N.Y. 1994)). "The extent to which a disability may prevent regular work attendance is a relevant factor in determining whether a claimant is able to engage

in substantial gainful activity[.]" <u>Chiapa v. Secretary of Dept. of Health, Educ., and Welfare</u>, 497 F. Supp. 356, 360-61 (S.D.N.Y. 1980) (quotation and citations omitted) (finding error where the ALJ "conducted the hearing as though work attendance was irrelevant" and "specifically refused to allow plaintiff to ask the vocational expert at the hearing whether absenteeism would affect employability").

The record indicates that Plaintiff suffers from multiple conditions that have lasted for more than twelve months, are expected to last for more than twelve months, and preclude her from working on a sustained basis. Indeed, her work history demonstrates that these medical conditions have in fact precluded her from working at times. Due to various flares and related treatments, there have been periods when she had to miss time from work ranging from two to fourth months at a time. T.34. Her treating rheumatologist has kept her out of work for significant periods of time (over one month). T.304, 305, 306, 310, 311.

As far as her prospective level of absenteeism, it is undisputed that her medical conditions will be of lifelong duration. Sometimes the effects of her medical conditions are more severe than others. With regard to her MS, Plaintiff experiences "recurrent flares", T.252, "on average . . . every three to four months." T.28. Her MS causes pain and fatigue, and also interferes with her ability to sleep. T.357. Plaintiff's MS is progressively

-11-

worsening, and during recent relapses, she has experienced weakness in her right leg, facial numbness, and constant tingling and burning sensations in her right toes. T.162, T. 311. Because of the weakness in her leg, her doctors prescribed her a cane, which she has used approximately three days a week for over five years. T.22. During some relapses, Plaintiff is unable to walk even with the cane and requires a walker. T.22-23. As a result of the weakness in her legs, Plaintiff must use hand controls to drive. T.34. She has weakness in her arms and hands as well as generalized weakness throughout her body. T.323. Additionally, she experiences frequent muscle spasms. T.303-311, 322.

With regard to her psoriasis, she experiences flares approximately five times per year; some are so severe that she is very limited to the type of clothing she can wear because clothing seriously irritates her skin. Indeed, she can wear "no clothing at times because of the degree of the flare." T.29. These episodes can last up to two weeks. T.31.

The fibromyalgia, and resulting pain and joint problems are constant, as are the serious side effects of her medication, which include drowsiness, dizziness, and fatigue.

In light of these well-documented, serious medical conditions and the many side-effects of her medications, Plaintiff's treating physicians all concluded that she is likely to have a substantial number of absences from work each month. T.487-95. These opinions

are consistent with her work history and with the objective medical evidence indicating that Plaintiff's MS is worsening and becoming more difficult to treat; that her psoriasis is severe and has been described by her doctors as intractable; and that in addition to the pain caused by her MS, she suffers from pain due to psoriatic arthritis and fibromyalgia. Moreover, these opinions are supported by the independent medical examiner who concluded that Plaintiff "is not capable of tolerating normal stresses, pressures and physical demands associated with a full-time work routine." T.259.

Notably, at the hearing, there was no medical evidence specifically addressing Plaintiff's ability to engage in substantial gainful activity. Thus, the ALJ relied heavily on the testimony of the vocational expert ("VE") when determining that Plaintiff was not disabled. T.81-82. When asked by the ALJ if any jobs would be available if Plaintiff were to be off task more than 30 percent of the day, require unscheduled breaks, or be absent more than three times per month, the VE responded that there would be no jobs available. T.42.

The limitations posed in the foregoing hypothetical were amply supported even prior to Plaintiff's supplemental submissions. However, the new evidence submitted to the Appeals Council establishes more conclusively that the ALJ's RFC determination cannot stand. In particular, Plaintiff's treating physicians opine that Plaintiff would miss at least four or more days of work per

month. T.487, 490, 494. Vocational experts in Social Security cases have testified that missing three or more days of work per month renders a claimant unemployable, as that level of absenteeism is beyond the bounds of reasonable employer tolerance. See, e.g., Montalvo v. Barnhart, 457 F. Supp.2d 150, 163-64 (W.D.N.Y. 2006) (vocational expert testified that absenteeism of two to three missed days per month generally would not be tolerated by an employer and would likely lead to the employee's dismissal).

Likewise, Dr. Freeman, Dr. Halpert, and P.A. Mendelson, all agreed that Plaintiff would need "complete freedom to rest frequently without restriction" in addition to having a 30-minute break. T.490, 494.  They also found that her concentration and ability to sustain work pace would be severely limited (by 33 percent or more) by her impairments. T.490. Therefore, in light of the new evidence, it is clear that Plaintiff would be unable to engage in substantial gainful activity due to her disability. T.42.

### 2. Error in Concluding that Episodic Conditions Preclude a Finding of Continuous Disability

The ALJ concluded that "[w]hile the record demonstrates relatively severe and persistent limitation arising from several impairments, they do not indicate that the claimant has suffered complete loss of capacity to work for a continuous period of 12 months." T.80. The ALJ accordingly found that Plaintiff is able to perform substantial gainful employment.

Contrary to the Commissioner's finding, the fact that Plaintiff suffers from episodic conditions does not preclude the award of disability benefits. See <u>Totten v. Califano</u>, 624 F.2d 10, 11-12 (4th Cir. 1980) ("The 'continuous period' language of § 423(d)(1)(A) does not require a claimant to show an inability to engage in any substantial gainful activity every day of his existence. An individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act, otherwise, the ability to perform substantial gainful activity even one day each month or each year would disqualify an individual for benefits.") (internal citations omitted); see also <u>Gold v. Secretary of Health, Educ., & Welfare</u>, 463 F.2d 38, 41 n. 6 (2d Cir. 1972) ("To receive benefits under the Social Security Act, one need not be completely helpless or unable to function . . . .").

It bears emphasizing that MS is an "incurable, progressive disease subject to periods of remission and exacerbation." <u>Vesely v. Commissioner of Soc. Sec.</u>, No. 3:08cv258, 2009 WL 3199084, at *7 (S.D. Oh. 2009) (reversing determination that person with MS was not disabled) Thus, the duration and frequency of the flare-ups and remissions should be considered when determining if an individual is disabled. <u>Id.</u> (citing <u>Wilcox v. Sullivan</u>, 917 F.2d 272, 277 (6th Cir. 1990)); see also <u>Parish v. Califano</u>, 642 F.2d 188, 193 (6th Cir. 1981) (" Because the . . . period wherein plaintiff attempted to work and attend school was unquestionably a period of remission,

we believe the ALJ erred in placing undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition [i.e., MS].").  Plaintiff has a history of missing months of work due to her various flare-ups, and Dr. Halpert notes in his Medical Source Statement that her symptoms have not improved over time.  T.34, 490.  Further, Dr. Halpert notes that Plaintiff has had these symptoms for "many, many years prior to 2008."  Thus, for the purposes of 42 U.S.C. § 423(d)(1)(A), Plaintiff satisfied the requirements of a continuous impairment.

## C. Failure of the ALJ to Properly Weigh the Treating Physicians' Opinions

The ALJ discounted the opinions of Plaintiff's treating physicians because she believed that there was insufficient evidence of continuing treatment through the date of her decision. T.80. This also constituted factual and legal error. First, the record evidence shows continuous treatment over the course of years. Plaintiff treated with her rheumatologist, Dr. Semble, through at least September 2010. T.453. Thereafter, she moved to New York and has continued treatment here. T.12. Second, as the ALJ should have been aware, Plaintiff moved from North Carolina to New York in October 2010, just a few weeks before the administrative hearing. It was unrealistic for the ALJ to expect Plaintiff to continue to see Dr. Semble after moving to New York. Similarly, it is understandable that it would take Plaintiff time

to find new health care providers in New York and establish a treating relationship with them.

The ALJ ignored the record evidence that, having moved to upstate New York, she was being treated by Dr. Halpert for her MS symptoms and that Dr. Halpert referred her to the MS Center in Buffalo, New York for an appointment on April 25, 2011. T.12. Knowing that Plaintiff had this appointment, the Commissioner should have held the record open and exercised her duty to develop the record and asked for more recent treatment notes. DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998) ("The statutory duty of an ALJ to issue subpoenas or take other actions sua sponte as necessary to develop the record applies, of course, to all claimants, see 42 U.S.C. § 423(d)(5)(B) (as incorporated by 42 U.S.C. § 1382c(a)(3)(G)); 20 C.F.R. §§ 416.912(d), 416.1450(d)(1), and not just to those who appear pro se.").

### D.  Failure of the Appeals Council to Properly Apply the Treating Physician Rule

Plaintiff argues that the Appeal Council committed legal error in denying review without addressing why it rejected evidence from a treating medical source.  When reviewing the record, the Appeals Council must follow the same rules as must an ALJ for considering opinion evidence.  See 20 C.F.R. § 416.927(e)(3). The "treating physician rule" instructs the ALJ to give controlling weight to the opinions of a claimant's treating physician, as long as the opinion

is well-supported by medical findings and is not inconsistent with the other evidence in the record. 20 C.F.R. § 404.1527(c)(2). The ALJ cannot discount a treating physician's opinion unless it "lack[s] support or [is] internally inconsistent." Snell v. Apfel, 177 F.3d at 133. Furthermore, the ALJ may not "arbitrarily substitute his own judgment for competent medical opinion." Balasmo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).

Controlling weight is given to a "treating source's opinion on the issue(s) of the nature and severity" of a claimant's impairment(s) if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999). A treating source is a claimant's "own physician, psychologist, or other acceptable medical source" who provides or has provided "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. Pursuant to the regulations, an "ongoing treatment relationship" is generally found where an acceptable medical source treats a claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." Id. The Appeals Council must give "good reasons" for the weight given

to the opinion of a treating medical source. 20 C.F.R. § 416.927(c)(2).

Here, the Appeals Council accepted additional information from treating physicians Dr. Freeman and Dr. Halpern. Dr. Freeman had treated Plaintiff for psoriatic arthritis and fibromyalgia since October 2010, and thus had a treating relationship with Plaintiff for over one year prior to completing his Medical Source Statement. T.494. Dr. Halpern and P.A. Mendelson had treated Plaintiff for MS since June 2011, ten months before completing their Medical Source Statement. T.489, 491. Both Dr. Freeman and Dr. Halpern clearly qualified as treating physicians, and the Appeals Council was obligated to give specific reasons why their statements were rejected in its denial of review. The Appeals Council's failure to do so was plainly erroneous. See Stadler v. Barnhart, 464 F. Supp. 2d 183, 187 (W.D.N.Y. 2006) (finding that Appeals Council erred in failing to discuss contents of report by claimant's treating psychiatrist, submitted after ALJ issued his decision and during pendency of appeal from denial of his application for benefits; Appeals Council summarily concluded, without stating any "good reasons", that the new evidence was insufficient to disturb ALJ's determination).

## E. Erroneous Credibility Determination

The ALJ found that Plaintiff's "allegation that side effects of [her] medications have kept her from working is not entirely

consistent with the fact that she successfully completed college course work and earned a Bachelor's degree in 2009 . . . ." T.81. This finding is not supported by substantial evidence.

In light of the particular circumstances of Plaintiff's case, the fact that she continued her education does not undermine her credibility concerning the side-effects of her medication. In contrast to full-time work, which requires an ability to work consecutive days for eight hours per day, school does not. The evidence in the record indicates that Plaintiff only attended class two nights a week for no more than four hours per night. T.163. Furthermore, some of Plaintiff's schooling was accomplished online, allowing her to avoid the difficulties attendant to commuting and the discomfort of a classroom. Notably, Plaintiff did miss class because of her symptoms, and her professors accommodated her bouts of illness. Inasmuch as Plaintiff's earning of a degree was the only basis for discounting her testimony concerning the side effects of her medication, the ALJ's credibility finding was not supported by substantial evidence.

Plaintiff also argues that the ALJ failed to take into account the combined side-effects of her various medications. The record establishes that Plaintiff takes multiple medications, each having several serious side-effects. Plaintiff requires Cymbalta, an antidepressant which has been found to be successful in alleviating the pain of fibromyalgia. T.27. Side-effects of Cymbalta include

nausea and sleepiness.[2] Plaintiff takes Zanaflex for muscle spasms caused by her MS. This drug causes, among other things, drowsiness. T.27. Plaintiff testified, "[Zanaflex] makes me very sleepy to the point I go to sleep." T.28. In addition, Plaintiff takes the pain reliever Vicodin, which contains hydrocodone, a narcotic that causes drowsiness. T.27.[3] Plaintiff testified that the Vicodin makes her drowsy and also inhibits her ability to think and react. T.28. Plaintiff takes Methotrexate,[4] a chemotherapy drug which has significant side-effects, including nausea, drowsiness, headache, hair loss, blurred (or loss of) vision, weakness or difficulty moving one or both sides of the body, and loss of consciousness. Plaintiff testified that she suffers from diarrhea, nausea, fatigue, and flu-like symptoms when she takes Methotrexate. T.32. To assist with sleeping at night, Plaintiff takes Ambien, which has side-effects of daytime drowsiness, dizziness, weakness, and feeling "drugged" or light-headed.[5] Plaintiff also takes Neurontin, an anti-convulsant medication used to treat seizures and some types of pain. Neurontin can cause dizziness, drowsiness, weakness, and feeling tired.[6] Finally, when Plaintiff has severe flares of MS,

---

[2]    http://www.cymbalta.comlPages/cymbaltaandfibromyalgia.aspx.

[3]    http://www.drugs.com/sfxlvicodin-side-effects.html.

[4]    http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682019.html.

[5]    http://www.drugs.comlambien.html.

[6]    http://www.drugs.comlneurontin.html.

she is treated with intravenous steroids. The medical records thus overwhelmingly support the conclusion that Plaintiff suffers serious, debilitating side-effects from her medications that significantly interfere with her ability to engage in substantial gainful activity on a regular and continuing basis.

### F.   Remedy

In evaluating an appeal from the Commissioner's denial of Social Security benefits, a reviewing court should consider the whole record. Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If the Appeals Council declines review after accepting new evidence into the record, the Commissioner's final decision becomes the ALJ's decision plus the implicit rejection of the new evidence. Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). A reviewing court must then consider the substantiality of the ALJ's decision in light of the evidence that was considered by the ALJ and the additional evidence accepted by the Appeals Council. See id.  If the additional evidence is consistent with the ALJ's findings, then the decision should be affirmed. See id. at 47. However, if the additional evidence undermines the ALJ's decision, then the case should be reversed or remanded. See Brown, 174 F.3d at 60, 65 (stating that conflicting evidence may indicate that the claimant's limitations were not sufficiently documented or worsened over time).

In this case, the additional evidence accepted by the Appeals Council wholly undermines the ALJ's decision. It is undisputed that, as the ALJ found, Plaintiff has multiple severe impairments- MS, fibromyalgia, psoriasis, asthma, and obesity. This Court's review of the record indicates that the symptoms of, and treatment for, Plaintiff's MS alone render her unable to find work due to her disability. Considered in combination, Plaintiff's multiple severe impairments are disabling, as explained more fully above in this Decision and Order. Due to her multiple serious conditions, Plaintiff is "challenging to treat": The treatments for her for psoriasis aggravates her MS. Likewise, when the MS flares, the treatment for that condition suppresses Plaintiff's immune system, thereby causing her psoriasis to flare. See T.35, 308, 310. Long-term remission of any of her conditions has been impossible. T.421.

The ALJ cited a lack of current medical evidence and the intermittent nature of Plaintiff's MS and psoriasis flares as reasons that Plaintiff did not have a disabling combination of impairments. T.81-82. However, as stated elsewhere in this Decision and Order, the new reports accepted by the Appeals Council constitute current medical evidence which compels a finding of disability.

Furthermore, as detailed above, the ALJ incorrectly determined that Plaintiff did not have a continuous disabling impairment for

at least 12 months. "Simply because [Plaintiff's] symptoms were 'intermittent' does not necessarily mean that [she] was not disabled for a twelve month period." Martonik v. Heckler, 773 F.2d 236, 241 (8th. Cir. 1985).

"Substantial gainful activity" requires performance of substantial work with "reasonable regularity". DiRienzis v. Heckler, 748 F.2d 352, 353 (2d Cir. 1984). The ALJ's determination that Plaintiff is not disabled because her impairment will not preclude her from engaging in substantial gainful activity was not supported by the substantial evidence in the record, as described above. On a daily basis, Plaintiff requires so many periods of rest due to her symptoms and medications that she is unable to complete a full work day. The significant and frequent flares of her various conditions mean that she will suffer unacceptable absences in the long-term. Thus, her occupational base for sedentary work has been eroded to the point where she is not employable.

Based on the entire record, including the new medical sources statements, the Court finds that there is such substantial evidence of Plaintiff's disability that any further proceedings at the administrative level would be superfluous. The Court therefore grants Plaintiff's motion for judgement on the Pleadings, reverses the decision of the Commissioner, and remands this case to the Commissioner for calculation and payment of benefits with an onset date of December 12, 2008.

-24-

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision to deny benefits was not supported by substantial evidence in the record and contained errors of law. Moreover, a review of the record in its entirety reveals that the substantial evidence contained in the record supports a finding that Plaintiff is disabled, as defined in the Act, and therefore is entitled to disability benefits. Accordingly, Plaintiff's motion is granted, and the Commissioner's motion is denied. This claim is remanded to the Commissioner for calculation and payment of benefits.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     October 7, 2013
           Rochester, New York